## CHESAPEAKE & OHIO RY. CO. v. INDIANA FIBRE PRODUCTS CO.

### No. 392.

District Court, N. D. Indiana, Fort Wayne Division.

Feb. 20, 1934.

Albert H. Cole, of Peru, Ind., for plaintiff.

Hugh B. Olds, of Fort Wayne, Ind., for defendant.

SLICK, District Judge.

Plaintiff is a common carrier by rail and operates a railroad extending from the city of Newport, Va., through Virginia, Kentucky, Ohio, and Indiana, to Chicago, Ill. Its lines pass through Deep Water, W. Va.

The defendant is an Indiana corporation and operates a factory at Marion, Ind. From November 5, 1928, to April 1, 1930, defendant delivered to the Virginian Railroad Company certain carloads of freight to be transported by said Virginian Railroad Company from Army Base in the city of Norfolk, Va., to Deep Water, W. Va., there to be delivered to the plaintiff and by plaintiff transported to the defendant at Marion, Ind.

From November 5, 1928, to August 1, 1929, thirty-seven carloads of freight were so delivered, and the commodity composing such shipments was designated as "rolls, reels or bales of unmanufactured wood pulp." Beginning August 1, 1929, and continuing until April 1, 1930, twenty-five carloads of the same commodity were transported in the same manner, but beginning on August 1, 1929, the commodity was designated as a "given number of reels or rolls of wood pulp board or wood pulp boards."

Plaintiff brings this suit against defendant to charge defendant for the difference in freight rate between "wood pulp board" and "wood pulp," the established rate for "wood pulp board" from Army Base, Va., to Marion, Ind., being 35½ cents per hundred pounds, and the lawful and established rate for "wood pulp" between the same localities being 31½ cents per one hundred pounds.

The commodity shipped was a raw material imported from Finland and was transported by rail from the seaboard (Army Base) to the manufacturing plant of the defendant at Marion, Ind., where said material was used up in the manufacture of pie plates. This raw material was called by some of the experts "wood pulp" and by others "wood pulp board." There is very little difference, and it was hard for the manufacturers, who were experts on this subject, to differentiate between the different samples that were submitted during the trial—some calling one sample "wood pulp" and others calling the same sample "wood pulp board."

Defendant insists that the prevailing rate is controlled by the rates promulgated by the Interstate Commerce Commission and should be the rate on an imported raw material. Plaintiff claims that the scheduled, published, and promulgated rate for "wood pulp board," being a domestic rate, should prevail.

The evidence brought out at the trial was quite lengthy and consists of testimony of so-called experts offered by both plaintiff and defendant. This case and the testimony adduced brings out clearly what the dean of the law school of the University of Iowa meant when he described an expert as "a common man far away from home."

Whether the commodity shipped was "wood pulp" or "wood pulp board"; whether N. O. I. B. N. means "not otherwise indexed by name herein," or "not otherwise indexed by name in the official classification as described in the title page hereof"; whether the legal rate to be charged is that found in the schedule of rates fixed for import commodities, or is the domestic rate promulgated and found in the official and consolidated Freight Classification No. 5, which is Plaintiff's Exhibit No. 34, were questions which the experts attempted to solve for the court, and a consideration of this testimony leads to "confusion worse confounded."

Plaintiff, through its agents, solicited this freight business from the defendant at Marion, Ind., and suggested the classification adopted and paid on by defendant, and, while as plaintiff says, this cannot relieve defend-

ant from paying the lawful and proper tariff, still it does throw some light on the question at issue.

■ The witnesses differed materially as to whether the commodity was "wood pulp" or "wood pulp board," and as to the proper interpretation to be given to the published tariff schedules. Plaintiff argues that, because an imported ad valorem duty was paid on the commodity as "wood pulp board," when "wood pulp" is admitted free of duty, conclusively establishes that the commodity was "wood pulp board." But this is only a circumstance to be considered in attempting to solve the question. At most it only shows the classification adopted by the customs officials. It is persuasive, but not conclusive. On the other hand, the classification fixed by the solicitors and agents of the plaintiff is persuasive as to its correctness, but not conclusive. The evidence of witness Cox, concerning customs and rules adopted and used in interpreting the tariff schedule, stands uncontradicted in the record, and the abbreviation N. O. I. B. N. must be taken under the evidence to mean "not otherwise indexed by name herein."

■ There is no question that this commodity was purchased in and shipped from Finland. Its character then became fixed as an imported article of commerce and took the rate prescribed as an article of foreign commerce, and its character as such was, under the authorities, not changed by the necessary incidents of transportation.

This being true, defendant paid the correct and proper rate, 31½ cents per one hundred pounds, and plaintiff has received its full compensation under the lawful rate.

Judgment will be for defendant and against plaintiff for costs.